# LAMAR OUTDOOR ADVERTISING, INC. v DEPARTMENT OF TRANSPORTATION,

## STATE OF FLORIDA and SUN STATE DEVELOPMENT CORPORATION v DEPARTMENT OF TRANSPORTATION, STATE OF FLORIDA

Case Nos. 85-2493T and 85-2671T

State of Florida, Division of Administrative Hearings

November 15, 1985

### APPEARANCES OF COUNSEL

**E. Snow Martin** for petitioner Lamar.

**Richard C. May** for petitioner Sun State.

**Charles G. Gardner,** Department of Transportation, for respondent.

### OPINION

K.N. AYERS, Hearing Officer.

Pursuant to a notice, a consolidated hearing was held in the above-styled cases on September 23, 1985, at Bartow, Florida.

These cases involve the denial by the Florida Department of Transportation (DOT), Respondent, of applications by Lamar Outdoor Advertising (Lamar), Petitioner in Case No. 85-2493T and Sun State Development Corporation (Sun State), Petitioner in Case No. 85-2681T, to erect outdoor advertising signs at or about the same location. At the beginning of the hearing, the parties stipulated to most of the operative facts. Thereafter Lamar called two witnesses, Sun State called one witness, DOT called two witnesses and eleven exhibits were admitted into evidence.

A proposed recommended order has been submitted by Lamar. Those proposed findings, to the extent they are inconsistent with those herein contained, are rejected as not supported by the evidence, as noted in Appendix A attached hereto and made a part hereof.

## FINDINGS OF FACT

1. Lamar acquired permits AA-634 and 7504 from Peterson Outdoor Advertising Company for a double-faced sign located on U.S. 98, South, approximately one-half mile north of Crystal Lake Drive on a site leased from Mary D. and Billy Allred.

2. The lease (Exhibit 1.), executed in 1978, was for a three-year term with automatic renewal for an additional five-year period and thereafter from year to year on the same terms and conditions unless terminated by lessee by giving 30-days notice prior to the end of the lease year.

3. By warranty deed dated June 14, 1983, (Exhibit 2.) Sun State acquired the property on which this sign was located from Allred.

4. Rent on this lease for 1984 was sent to Allred by Lamar, endorsed over to Sun State and cashed by Sun State. A check for rent for 1985 sent by Lamar to Sun State was never negotiated.

5. By letter dated April 3, 1985, (Exhibit 4.), Sun State Homes told Lamar to immediately remove the sign from its property on U.S. 98, South.

6. On May 16, 1985, Sun State applied for a permit for a sign on U.S. 98, 550-feet north of North Crystal Lake Drive. This application was disapproved by DOT on June 7, 1985, in Exhibit 3 because it was in conflict with the sign for which Lamar held tags for the proposed site. On or about the same time, Sun State applied to Polk County for a building permit to erect a sign at this site. Polk County disapproved the application because DOT had denied the permit.

264

7. By letter dated May 29, 1985, Sun State appealed the denial of their application.

8. On or about May 27, 1985, Lamar removed their sign from Sun State's property. On May 28, 1985, Lamar submitted an application for a permit to erect a sign on U.S. 98, 1,200 feet north of N. Crystal Lake Drive (Exhibit 5.) and simultaneously surrendered tags no. AA-634 and 7504. Lamar had obtained permission from the owner of that property to erect a sign at this site.

9. This application was denied by DOT because of the appeal by Sun State from its denial. DOT will not approve an application for a sign permit when the right of occupancy of the site is contested. Lamar appealed this denial and the two cases were consolidated for hearing. The two applications are mutually exclusive as only one can be granted without violating spacing requirements.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties to, and the subject matter of, these proceedings.

Section 479.07, *Florida Statutes* (1984 Supp.) provides generally that no person shall construct, erect, operate, use or maintain a sign without first obtaining a permit from the DOT. Other provisions of this section regulate space, renewal of permits, and subparagraph (7) provides:

A permittee shall at all times maintain the permission of the owner or other person in lawful control of the sign site to have and maintain a sign at such site.

Lamar's sign was in existence when Sun State acquired the property and the latter was put on notice that Lamar had an interest in that site, legal or otherwise. The lease is on a Peterson Outdoor Advertising Corporation form and gives the lessee the option of terminating the lease at lessee's sole discretion if maintaining the sign becomes unprofitable or by giving lessor not less than 30 days' notice prior to the expiration of any lease year. No provision allowing lessor to terminate the lease is contained in this lease except "in the event the property is improved by the erection of buildings by lessor or at lessor's direction, lessor shall have the right to cancel this agreement by giving lessee thirty (30) days advance written notice, together with a rebate of all unearned rent."

No evidence was presented that Sun State has erected buildings on this property and was authorized to terminate the lease pursuant to

**265**

that clause. However, it is noted that the deed to Sun State includes "the current year's fruit crop" which indicates an orange grove was being sold to a developer and the erection of buildings on this property would not be surprising. On the other hand, Lamar presented no evidence or argument that the lease was improperly terminated by Sun State or that Sun State could not terminate the lease by giving thirty (30) days written notice.

Under the doctrine of mutuality of obligations of contracts, if a contract is specifically terminable by one party only, courts have held the contract void and unenforceable. *Miami Coca Cola Bottling Co. v. Orange Crush Co.*, (1923) 291 F. 102., aff. 296 F. 693. But see, *Thompson v. Shell Petroleum Corp.*, 178 So.2d 413 (Fla. 1938).

Once the lease was terminated, Lamar had no right to the permit for this sign. Section 479.07(7), *Florida Statutes* (1984 Supp.) Accordingly, when Sun State applied for a permit there was no valid sign on this site.

Respondent's statewide policy that competing applicants for outdoor advertising sign permits shall be treated on a first-come, first-serve basis was upheld in *Country Corner v. DOT*, DOAH Case No. 81-1315T. At the time Sun State applied for a permit, these permits previously issued to Lamar were no longer valid, although Lamar still retained the tags. When Lamar subsequently removed its sign there was no sign on the site and Sun State had an application pending for that site. Even if Lamar is found entitled to the permit so long as its signs remains in place, once the sign was removed the site became available and Sun State's application was first in line for a permit for this site.

From the foregoing it is concluded that Sun State's application for permits to erect a sign along U. S. 98, South, 550 feet north of N. Crystal Lake Drive was filed prior to the application of Lamar for a competing sign and permits for this site should be issued to Sun State Development Corporation. It is

RECOMMENDED that the application of Sun State Development Corporation be approved and the applications of Lamar Outdoor Advertising, Inc. be denied.

DONE and ENTERED this 15th day of November, 1985, in Tallahassee, Florida.